UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA RODRIGUEZ, | ) Case No. CV 08-1893-JEM |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) REVERSING DECISION OF |
| | ) COMMISSIONER AND REMANDING FOR |
| MICHAEL J. ASTRUE, | ) FURTHER PROCEEDINGS |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PROCEEDINGS**

On December 26, 2008, Donna Rodriguez ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on March 30, 2009. On September 14, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff Donna Rodriguez is a 47 year old female who was determined to have the medically determinable severe impairment of post-cervical discectomy and fusion with residual neck and back pain and left side weakness and numbness.  (AR 461.)  She alleges disability since June 1, 2000.  (AR 459.)  She has not engaged in substantial gainful activity since July  31, 2002  (AR 461.)

On July 31, 2002, Plaintiff Donna Rodriguez filed an application for SSI benefits.  (AR 459.)  Plaintiff's claim was denied initially, on reconsideration, and by Administrative Law Judge ("ALJ") decision on December 16, 2003.  The Claimant appealed this decision and, on March 24, 2004, the Appeals Council remanded the case to the ALJ for further proceedings.  (AR 15.)

Plaintiff appeared and testified at a hearing held before ALJ Keith Varni on November 15, 2005 in San Bernardino, California.  ALJ Varni issued an unfavorable decision on February 16, 2006.  (AR 15-22.)  Again, the Appeals Council remanded for further proceedings.  (AR 459.)

Plaintiff appeared and testified at a hearing held before ALJ Philip E. Moulaison on July 3, 2008, in San Bernardino, California.  (JS 2.)  The ALJ issued an unfavorable decision on August 22, 2008.  (AR 459-67.)  The ALJ determined that, although Plaintiff is unable to perform past relevant work, she can perform alternate jobs in the national economy and thus has not been disabled within the meaning of the Social Security Act since the application date.  (AR 466-77.)  The Appeals Council declined to review the matter.  (JS 2.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1.  Whether the ALJ properly held that Plaintiff can perform the job of bench assembler?

2.  Whether the ALJ properly considered the treating clinician's opinion regarding Plaintiff's assessed GAF score of 41?

3.  Whether the ALJ properly considered the consultative examiner's opinion of psychiatrist Dr. Linda Smith?

4.  Whether the ALJ properly considered the severity of Plaintiff's mental impairment?

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotations and citations omitted).  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ has the responsibility "to determine credibility, resolve conflicts in medical testimony and resolve ambiguities," but the ALJ's findings must be supported by "specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998.)  A reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

The Court reverses the ALJ's decision and remands for further proceedings.  The ALJ failed to develop the record fully regarding Plaintiff's treating physician Dr. Costello and the combined effects of Plaintiff's multiple ailments and multiple medications on her functioning.  The ALJ also improperly rejected Plaintiff's subjective symptom testimony.

**A.     The Sequential Evaluation**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to a listed impairment, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement

1    to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the

2    claimant, the burden shifts to the Commissioner to show that the claimant may perform

3    other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

4         **B.    The ALJ's Step Two Determination**

5         At step two of the five step sequential inquiry, the ALJ determines whether the

6    claimant has a medically severe impairment or combination of impairments.  Bowen, 482

7    U.S. at 140-141.  An impairment is not severe if it does not significantly limit the claimant's

8    ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ, however,

9    must consider the combined effect of all the claimant's impairments on his ability to function,

10   regardless of whether each alone was sufficiently severe.  Id.  Also, the ALJ must consider

11   the claimant's subjective symptoms in determining severity.  Id.

12        The step two inquiry is a de minimis screening device to dispose of groundless

13   claims.  Bowen, 482 U.S. at 153-154.  An impairment or combination of impairments can be

14   found nonsevere only if the evidence establishes a slight abnormality that has no more than

15   a minimal effect on an individual's ability to work.  Smolen, 80 F.3d at 1290; Social Security

16   Ruling ("SSR") 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR

17   85-28).

18        In this case, the ALJ determined that Plaintiff's neck injury was a severe impairment

19   that precluded her prior work but concluded at step five of the sequential process that there

20   were other jobs in the national economy that Plaintiff could perform.  The ALJ determined at

21   step two of the sequential process that Plaintiff's bladder problems and bipolar disorder

22   imposed only minimal limitations and thus were not severe.

23        **C.    Evidence Regarding Plaintiff's Physical And Mental Impairments**

24        Plaintiff broker her neck in 1999.  (AR 427.)  She had surgery that implanted metal

25   plates and screws in her neck.  (AR 130, 342, 346, 392, 427.)  Ever since the surgery, she

26   has had left side weakness and numbness (AR 427, 461, 462) and reaching is limited in her

27   upper extremity.  (AR 209, 453, 17.)  These facts are undisputed.

28

Plaintiff claims to be in constant, chronic pain since the 1999 surgery.  (AR 40, 50, 56, 103, 105, 120, 123, 130, 132, 159, 171, 194, 293, 294, 295, 296, 304, 344, 380, 407, 427-28.)  She states that the pain radiates from the back of her neck down her spine to her waistline.  (AR 490.)  She says that she has difficulty standing or walking (AR 56, 122, 130, 149, 428, 464, 488) and frequently has to rest and lie down because of the pain.  (AR 421, 445, 464, 491, 502-03.)  At various times, she has used a wheelchair, walker, and cane. (AR 444, 504.)

She takes multiple medications, several times daily, for her neck pain, including Vicodin (every four hours), Motrin, Dilaudid (three tablets four times a day), Valium (four times a day), Codeine, Neurontin, and Restoril (two tablets at bedtime).  (AR 105, 108, 120, 124, 135, 195, 197-203, 271, 304, 390, 393, 430-31.)  These medications were described by a consulting internist as "strong." (AR 391.)  Her treating physician Dr. Costello observed that she takes "quite a bit of Motrin and Vicodin." (AR 324.)  He also stated that Plaintiff will need to take medications the rest of her life.  (AR 390.)  Dr. Costello referred Plaintiff to Loma Linda for management of her "chronic pain disorder" and physical therapy.  (AR 390, 429.)

Plaintiff also suffers from a bladder disorder that began several years ago that may be the result of her neck injury.  (AR 164, 313, 319-20, 429, 487, 492.)  Her kidneys shut down and she cannot urinate.  (AR 319-20, 325, 464, 487, 494.)  She needs a catheter at least once a day.  (AR 165, 319-20, 464, 487, 495.)  She even required hospitalization for this condition.  (AR 164, 313.)  She also has urinary incontinence and has been wearing a diaper since 2005.  (AR 177, 313, 319-20, 493.)  The ALJ found that Plaintiff's bladder problems were not supported by the weight of the evidence.  (AR 465.)  The ALJ's finding, however, is not supported by substantial evidence.  In fact, there was no evidence at all to support this generalized assessment and the ALJ cites no evidence.  None of the treating or consulting sources questioned the existence of a bladder problem.  The ALJ's determination that the bladder problem does not preclude all work is correct standing alone, but the ALJ

did not consider its impact on Plaintiff's functioning in combination with her other impairments.

Plaintiff further suffers from depression and bipolar disorder.  (AR 309, 317, 416, 445, 463.)  On several occasions, she was diagnosed with major depression.  (AR 259, 293-95, 303, 309, 406.)  Plaintiff has been taking Zoloft, Elevil, Seroquel, Depakote, Wellbutrin, Amitriptyline, Risperdal, and Prozac for her mental disorder several times daily.  (AR 135, 195, 203, 259, 262, 304, 413, 430-31.)  The 2005 ALJ decision determined that the bipolar disorder was severe.  (AR 17.)  Several examining psychiatrists and treating sources determined that Plaintiff's mental impairment resulted in moderate limitations in functioning.  (AR 259, 310, 359, 363-64, 377, 406.)  The ALJ nonetheless dismissed consulting psychiatrist Dr. Smith's moderate limitations assessment with the vague, unsupported and legally insufficient reason that there is no evidence that the limitations assigned by Dr. Smith "were of such severity for the duration requirement under the regulations."  (AR 465.)  The ALJ also did not address the other treating and consulting source opinions of moderate limitations in functioning.  (AR 259, 359, 363-64, 377.)  Nor did the ALJ address Plaintiff's Global Assessment of Functioning ("GAF") score of 41.  (AR 406.)  A GAF score between 41 and 50 may denote serious symptoms or a serious impairment in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders ("DSMC-IV") (4th Ed. 1994) (revised 2002) at 34.  Although the ALJ's failure to reference the GAF score, standing alone, does not render an RFC inaccurate, Howard v. Commn'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002), in this case the GAF score was consistent with most of the evidence.

The ALJ, however, found Plaintiff's mental impairments to be nonsevere at step two of the sequential process, based primarily on Dr. Abelueja's report.  (AR 462-63, 465-66.)  Although there is evidence that Plaintiff's mental impairments, standing alone, would not preclude all work, the determination that the Plaintiff's bipolar disorder is nonsevere and

1    results in no more than minimal limitations is highly questionable and strongly contradicted

2    by considerable evidence cited above, some of it not even addressed in the ALJ decision.

3         Additionally, the ALJ did not consider Plaintiff's mental impairment, its limitations and

4    medication side effects in combination with her other impairments and medications.  Plaintiff

5    takes multiple medications for multiple physical and mental impairments.  Plaintiff says that

6    these medications cause drowsiness, insomnia, fatigue, and incoherence and interfere with

7    concentration.  (AR 108, 120, 135, 171, 177, 430, 445, 500.)

8         One of the factors in assessing a claimant's subjective symptoms is the adverse side

9    effects of medications.  Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991); 20 C.F.R.

10   416.929 (2009); SSR 96-7p.  The ALJ found that there were no negative side effects from

11   Plaintiff's medications (AR 465) but this finding is not supported by substantial evidence.  In

12   fact, there was no evidence at all to support this assertion and the ALJ cites no evidence.

13   None of the consulting examiners on which the ALJ relied ever addressed the impact of

14   Plaintiff's multiple medications on her functioning.

15        Plaintiff's mother Lydia Gomez and third-party friend Martha Medina confirmed

16   Plaintiff's chronic pain, difficulties standing and walking, and occasional incoherence.  (AR

17   158-63; AR 170-75.)  The ALJ rejected their testimony as inconsistent with the "objective

18   record."  (AR 464.)  To reject lay witness testimony, however, the ALJ must make findings

19   "germane to each witness, and supported by substantial evidence of record."  Smolen, 80

20   F.3d at 1288-89.  The reasons germane to each witness must be specific.  Bruce v. Astrue,

21   557 F.3d 1113, 1115 (9th Cir. 2009).  The ALJ's dismissal of the Gomez/Medina statements

22   does not meet these legal standards.

23        At the July 3, 2008, hearing, vocational expert Sandra Fioretti was asked whether

24   there would be any jobs in the national economy, if Plaintiff's testimony at the hearing were

25   credited.  (AR 506.)  The answer was no.  (AR 506.)  The ALJ also asked whether there

26   would be any jobs if the assessment of Plaintiff's treating physician Dr. Costello that Plaintiff

27   would have to lie down frequently was credited.  (AR 508.)  Again, the answer was no.  (AR

28

508.)  At the November 15, 2005, hearing, Ms. Fioretti also indicated that employment would be precluded if Plaintiff had to lie down frequently.  (AR 454.)

At the July 3, 2008, hearing, the ALJ asked the vocational expert to consider the consulting examiners' assessments of Plaintiff's physical and mental impairments, both in isolation and in combination. (AR 506-508.)   Ms. Fioretti did not believe that Plaintiff could perform her prior employment but could do alternate jobs in the national economy.  (AR 506-508.)

The ALJ rejected Dr. Costello's RFC assessment, instead relying on the consulting examiners.  (AR 465.)  He also found Plaintiff's subjective symptom testimony "not credible."  (AR 464.)

**D.     The ALJ Failed To Develop The Record**

The ALJ decision fails to address or develop the record sufficiently regarding Plaintiff's treating physician or the impact on Plaintiff's functioning of multiple impairments and multiple medications.

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his decision.  Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The ALJ's duty to develop the record exists even when the claimant is represented by counsel.  Tonapetyan, 242 F.3d at 1150.

Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing or keeping the record open after the hearing to allow supplementation of the record.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

1       The only treating physician providing evidence is Dr. Costello who has seen Claimant

2 for many years.  (AR 508.)  He did an assessment indicating that Plaintiff's residual pain and

3 left side weakness interfere with her physical functioning.  He observed that she needs to lie

4 down frequently, an assessment which, if credited, would mean that there are no jobs in the

5 national economy Plaintiff could perform.  (AR 390.)

6       The ALJ rejected Dr. Costello's assessment.  The ALJ did not subpoena Dr. Costello

7 or attempt to obtain records from Loma Linda where Plaintiff received therapy on

8 Dr. Costello's referral.  (AR 429-30.)  This was error.

9       Treating physician opinions are entitled to "special weight," <u>Embrey v. Bowen</u>, 849

10 F.2d 418, 421 (9th Circuit 1988), indeed the "greatest weight."  <u>Orn v. Astrue</u>, 495 F.2d 625,

11 632 (9th Cir. 2007).  Greater weight is given treating physician opinions because treating

12 physician opinions are "employed to cure and thus have the greatest opportunity to know

13 and observe the patient . . ." <u>Smolen</u>, 80 F.3d at 1285; <u>see</u> <u>also</u> <u>Orn</u>, 495 F.3d at 633

14 (treating relationship provides a "unique perspective").  An ALJ may reject the opinion of a

15 treating physician that is contradicted but must make findings setting forth specific,

16 legitimate reasons for doing so that are based on substantial evidence in the record.  <u>Bray</u>

17 <u>v. Comm'r</u>, 554 F.3d 1219, 1228 (9th Cir. 2009); <u>Thomas v. Barnhart</u>, 278 F.3d 949, 956-57

18 (9th Cir. 2002).

19       Here, Dr. Costello treated Plaintiff for many years and was in the best position to

20 evaluate her physical and mental impairments and the impact of her multiple medications on

21 her functioning, <u>in combination</u>.  A claimant's illness "must be considered in combination

22 and must not be fragmentized in evaluating their effects."  <u>Beecher v. Heckler</u>, 756 F.2d

23 693, 694-95 (9th Cir. 1985).  The ALJ must consider the combined effect of all of a

24 claimant's impairments on his or her ability to function "without regard to whether each alone

25 was sufficiently severe."  <u>Smolen</u>, 80 F.3d at 1290.  The ALJ should have inquired further of

26 Dr. Costello before rejecting the only treating physician's opinion.  The ALJ also dismissed

27 Dr. Costello's opinion because he "seemed to reiterate" Plaintiff's subjective complaints (AR

28 465), but this is speculation, plainly untrue as he was aware from medical records of tests

1    done at Pomona Valley Community Hospital (AR 132, 285-88, 337), and not dispositive in

2    any event.

3          The ALJ primarily rejected Dr. Costello's assessment because it was contradicted by

4    the assessments of Drs. Dorsey, Klein, Ella-Tamayo and Abelueja, all consulting examiners.

5    (AR 465.)  These assessments, however, are thin and insufficient as a basis for rejecting

6    Dr. Costello's opinion.  None of these examining physicians considered the effect of

7    Plaintiff's multiple impairments and multiple medications on her functioning, in combination

8    with each other.

9          Dr. Dorsey is an orthopedist who saw Plaintiff once on October 21, 2002, six years

10   before the July 3, 2008 hearing.  His report was focused primarily on Plaintiff's neck injury.

11   (AR 344-47.)  He did not comment on Plaintiff's pain, bladder difficulties, or mental

12   impairments.  In view of the centrality of Plaintiff's indisputably severe neck injury to this

13   case, the ALJ should have obtained an updated orthopedic assessment.

14         Dr. Klein, an internist, saw the Claimant on April 4, 2003.   (AR 379-84.)  His report

15   was contradictory.  Although he assessed no restrictions (AR 383), he also found that range

16   of motion of the back could not be done (AR 381) and there was "unclear residual of

17   complaints of left-sided pain and weakness."  (AR 383.)  He also opined that there was an

18   "element of exaggeration" by Plaintiff as to her neck pain symptoms.  (AR 383.)  The

19   previous ALJ in 2006, however, gave "no probative weight to the opinions of Dr. Klein."  (AR

20   20.)  The current ALJ did not reference the 2006 rejection of Dr. Klein's testimony or explain

21   why his testimony suddenly is probative in 2008.

22         Dr. Tamayo, a consulting internist, saw Plaintiff on April 5, 2005.  (AR 391-96.)

23   Dr. Tamayo found some restrictions and decreased range of motion because of pain (AR

24   395-96) but found that Plaintiff could stand and work.  (AR 396.)  There was no

25   consideration of Plaintiff's bladder problem, bipolar disorder, or multiple medications.

26         Dr. Abelueja, a consulting board certified psychiatrist, saw Plaintiff on September 7,

27   2005.  (AR 412-19.)  He diagnosed her with bipolar disorder (AR 412) but found Plaintiff's

28   psychiatric limitations to be "none to mild."  (AR 418.)  Dr. Abelueja's opinion conflicts with

considerable evidence in the record, and did not consider Plaintiff's bladder problem, neck pain, and multiple medications.

None of these examining source opinions considered Plaintiff's multiple impairments and multiple medications in combination and thus do not constitute specific, legitimate reasons for rejecting Dr. Costello's assessment or Plaintiff's claim.

Dr. Costello, as Plaintiff's long term treating physician since 1998 (AR 107), was critical to this case.  Without subpoenaing Dr. Costello, the record was not sufficiently developed to justify rejecting his assessment of Plaintiff's functioning or to know if his assessment took into consideration Plaintiff's multiple impairments and multiple medications in combination with each other.  The ALJ should have subpoenaed Dr. Costello.

The ALJ failed to develop the record sufficiently.

**E.    Plaintiff's Credibility**

Any decision here also turns on Plaintiff's credibility regarding her pain and other symptoms.  The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.3d at 346; Reddick v. Chater, 157 F.3d at 722; Smolen v. Chater, 80 F.3d at 1281-82 esp. n. 2; Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ must specifically make findings that support this conclusion.  Bunnell, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so."  Reddick, 157 F.3d at 722;

1   Smolen, 80 F.3d at 1283-84.  The ALJ must identify what testimony is not credible and what

2   evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

3          The ALJ disregarded Plaintiff's credibility in a conclusory fashion that failed to meet

4   the legal standards presented above.  No medical source asserted that Plaintiff was

5   malingering and the ALJ does not suggest it either.  The ALJ primarily asserts that Plaintiff's

6   statements concerning the severity of her symptoms are "not credible" because they are

7   inconsistent with the medical evidence.  (AR 464, 465).  This fact, of course, is not

8   dispositive.  The ALJ was required to identify what testimony of Plaintiff was not credible

9   and what evidence discredits it.  The ALJ's generalized assessment is insufficient to

10  discredit Plaintiff's testimony.

11         The only other specific mention in the ALJ decision of Plaintiff's credibility is Dr.

12  Klein's opinion that "the claimant appeared to be exaggerating her pain and weakness."

13  (AR 462.)  In fact, Dr. Klein's opinion is that there were "elements of exaggeration" in

14  Plaintiff's description of her neck injury pain.  (AR 383.)  Dr. Klein did not address Plaintiff's

15  other impairments or multiple medications.  The prior ALJ, moreover, gave no probative

16  weight to Dr. Klein's testimony.  (AR 20.)

17         Most of the consulting examiners never even addressed Plaintiff's subjective

18  symptom testimony.  They disregarded Plaintiff's symptoms in making functional

19  assessments which they limited to the medical evidence.  Nor was there any assessment of

20  the impact of Plaintiff's multiple medications for her multiple impairments on her functioning.

21         The ALJ, moreover, disregarded and failed to discuss opinions from examining

22  sources finding Plaintiff to be credible. (AR 309, 374, 391.)

23         The ALJ failed to offer clear and convincing reasons for discrediting Plaintiff's

24  subjective symptom testimony and failed to discuss evidence tending to support that

25  testimony.

26

27

28

**F.      Summary**

The ALJ erred in not inquiring further of Dr. Costello who is the only physician that considered all of Plaintiff's multiple impairments and multiple medications.  This is particularly so because none of the consulting examiners on whom the ALJ relies did so. The ALJ's failure to consider the effect of multiple impairments and multiple medications on Plaintiff's ability to work violates the rule that the ALJ must consider a claimant's illnesses in combination and "not be fragmentized in evaluating the effects." Beecher, 765 F.2d at 694-95.  The ALJ must consider the combined effect of all of a claimant's impairments on his or her ability to function "without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290.  The ALJ's failure to do so undermined every determination made by the ALJ, i.e., the discounting of Dr. Costello's statements, the mental health testimony, the subjective symptom and lay witness testimony, and the vocational assessments.

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is reversed and remanded for further proceedings.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: <u>March 25, 2010</u>               <u>          /s/ John E. McDermott          </u>
                                                        JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE